**Exhibit E**

**Anadarko Complaint**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Chapter 11 |
| TRINITY RIVER RESOURCES, LP, | § | |
| | § | Case No. 16-10472-tmd |
| DEBTOR. | § | |
| | § | |
| | § | |
| | § | |
| ANADARKO E&P ONSHORE LLC, | § | |
| | § | |
| PLAINTIFF, | § | |
| v. | § | ADVERSARY NO. 16-01074-tmd |
| | § | |
| TRINITY RIVER RESOURCES, LP, | § | |
| | § | |
| DEFENDANT/ THIRD-PARTY | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | |
| | § | |
| BBX OPERATING, LLC, | § | |
| | § | |
| DEFENDANT/THIRD-PARTY | § | |
| DEFENDANT. | § | |
| | § | |

**PLAINTIFF ANADARKO E&P ONSHORE LLC'S FIRST AMENDED ORIGINAL**
**COMPLAINT**

Plaintiff Anadarko E&P Onshore LLC ("Anadarko" or "Plaintiff"), successor-in-interest

to Anadarko E&P Company LP, hereby files this First Amended Original Complaint

("Complaint") seeking a declaratory judgment, specific performance, and damages[1] against

Trinity River Resources, LP, the debtor in the above-captioned bankruptcy case ("Trinity" or

---

[1] Anadarko will file a proof of claim within the Trinity bankruptcy case but seeks to liquidate the damage claims through this First Amended Original Complaint. In addition, Anadarko considers all damage amounts that have accrued post-petition to be administrative expenses, and Anadarko intends to file a request for allowance of that administrative claim within the Trinity bankruptcy case.

"Debtor") and, a declaratory judgment and damages against Defendant/Third-Party Defendant BBX Operating, LLC ("BBX") and states:

## I.
## INTRODUCTION

Pre-petition, Anadarko sought various oil and gas interests and revenue to which it is entitled – yet Trinity and BBX refused to convey to Anadarko – under the applicable contracts. Anadarko files this Complaint to obtain a declaration regarding the oil and gas interests it is rightfully owed and, ultimately, to obtain those interests and the amounts owed to Anadarko pre- and post-petition. Anadarko seeks the assignment from Trinity of the interests to which it is entitled and payment by Trinity and/or BBX for the revenue related to those interests.

Anadarko and Trinity are parties to a Farmout Agreement effective April 1, 2011 through December 31, 2015, under which Trinity, as operator, agreed to perform oil and gas development operations on leases in Jasper County, Texas. The leases subject to the Farmout Agreement, and the Farmout Agreement itself, were subject to a prior Joint Venture and Development Agreement between Anadarko and other entities, including BBX and other Trinity and BBX affiliates, but to which Trinity was not a party. The Farmout Agreement provides that upon the drilling and completion of wells within specific units, Anadarko was entitled to – and did reserve – an overriding royalty interest in the leases where the wells were drilled. Further, BBX and Anadarko were parties to Operating Agreements and Division Orders that identified Anadarko's working interests and/or overriding royalty interests in certain wells. Notwithstanding these contractual obligations and Anadarko's reservation of its overriding royalty interest, neither Trinity nor BBX provided Anadarko with the revenue related to its overriding royalty interests in the 23 or more wells that were drilled and completed in these units.

- 2 -

Moreover, upon payout of any of those wells, Anadarko elected to exercise its contractual option to back-in to a working interest in those wells. Although Trinity and BBX acknowledged this obligation and provided Anadarko notice that at least eight of the wells had, in fact, reached payout, Trinity also refused to assign to Anadarko working interests for seven of the wells.

The oil and gas interests that Anadarko is owed under the applicable agreements, as well as the monetary damages that have accrued both pre- and post-petition, are significant claims against the Debtor's estate involving claims related to a significant portion of the acreage that Trinity claims to own. In its third-party complaint, Trinity claims to the extent that monetary damages are awarded to Anadarko that BBX should share in responsibility for their payment. Anadarko respectfully requests a declaratory judgment declaring its rights to the overriding royalty and working interests under the Farmout Agreement. Additionally, Anadarko is entitled to assignments of its working interests under the terms of the Farmout Agreement and respectfully requests that the Court compel specific performance of such assignments. Finally, Anadarko seeks damages in the amounts owed to Anadarko pre- and post-petition.

## II.
## JURISDICTION

1.      This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 157(a) and 28 U.S.C. § 1334(b) as a proceeding arising under title 11 or arising in or related to a case under title 11.

2.      This Court has personal jurisdiction over Trinity because Trinity is a debtor before this Court.

3.      This proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(B), 157(b)(2)(K) (determining the validity, extent, or priority of liens), 157(b)(2)(M)

(concerning the use of property), and 157(b)(2)(O) (proceeding affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship).

4. With respect to all claims asserted by Anadarko against Trinity and BBX in this Complaint, Anadarko consents to the entry of final orders or judgment by the Bankruptcy Court if it is determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

### III.
### VENUE

5. Venue is proper under 28 U.S.C. § 1409(a) & (e).

### IV.
### PARTIES

6. Plaintiff Anadarko has its principal place of business located at 1201 Lake Robbins Drive, The Woodlands, Texas 77380. Anadarko E&P Onshore LLC is a successor-in-interest to Anadarko E&P Company LP, whose principal place of business was also located at 1201 Lake Robbins Drive, The Woodlands, Texas 77380.

7. Defendant/Third-Party Plaintiff Trinity is debtor in the above-captioned bankruptcy case. Trinity is a limited partnership organized under the laws of the State of Texas. Trinity has appeared and answered herein.

8. Defendant/Third-Party Defendant BBX is a Texas limited liability corporation with a principal place of business at 3698 RR 620 South, Suite 113, Austin, TX 78738. BBX is a limited liability company organized under the laws of the State of Texas. BBX has appeared and answered herein.

9. Pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(3), Defendant/Third-Party Plaintiff Trinity may be served by mailing a copy of the summons and this complaint by first class mail postage prepaid to Trinity River Resources, LP, 3698 RR 620 S, Suite 113,

Austin, Texas 78738, Attention: Matthew Telfer, who is an officer, managing or general agent, or agent authorized by law to receive service of process. Pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(9), Defendant/Third-Party Plaintiff Trinity, as debtor, may be served by mailing a copy of the summons and this complaint by first class mail postage prepaid to the address shown in debtor's bankruptcy petition: Trinity River Resources, LP, 3698 RR 620 S, Suite 113, Austin, Texas 78738, Attention: Matthew Telfer. Pursuant to Federal Rule of Bankruptcy Procedure 7004(g), service is also being made on Defendant/Third-Party Plaintiff debtor's attorneys, William A. (Trey) Wood III and Jason G. Cohen, Bracewell LLP, 711 Louisiana, Suite 2300, Houston, Texas 77002.

10.     Pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(3), Defendant/Third-Party Defendant BBX may be served by mailing a copy of the summons and this complaint by first class mail postage prepaid to BBX Operating, LLC, 3698 RR 620 S, Suite 113, Austin, Texas 78738, Attention: Matthew Telfer, who is an officer, managing or general agent, or agent authorized by law to receive service of process. Pursuant to Federal Rule of Bankruptcy Procedure 7004(g), service is also being made on Defendant/Third-Party Defendant's attorneys, Eric J. Taube and Mark C. Taylor, Waller Lansden Dortch & Davis, LLP, 100 Congress Ave., Suite 1800, Austin, Texas 78701.

## V.
## CONDITIONS PRECEDENT

11.     All conditions precedent necessary to maintain this action have occurred or been performed.

## VI.
## FACTS

**A.      The Joint Venture and Development Agreement**

12.      On May 1, 2008, Anadarko E&P Company LP entered a Joint Venture and Development Agreement ("JVDA") with BBX; Kodiak Resources, Inc.; Amarado Oil Company, Ltd.; BTE Energy, LLC; Roger W. Hoch; Gillco Energy, LP; and Hickson Energy Corp., which are collectively defined in the JVDA as the "BBX Group."  Kodiak Resources, Inc. is an affiliate of Trinity and BBX.  A true and correct copy of the JVDA is attached hereto as Exhibit 1.

13.      The purpose of the JVDA was the development of mineral interests underlying certain contiguous properties located in Jasper County, Texas.  *See generally* JVDA.  Each of these properties was owned by one or more of the parties to the JVDA and jointly defined as an Area of Mutual Interest ("AMI").  *Id.*, Art. III.  The parties to the JVDA agreed to share certain oil and gas interests in acreage to be developed for their mutual benefit.  *See generally id.*

14.      The five areas within the JVDA AMI were as follows:

| Area Name | Acreage |
|---|---|
| AEPC Operated Area | 11,886.8 gross acres |
| BBX Operated Area | 8,200 gross acres |
| Offset to the 520 Unit Area | 952.3 gross acres |
| Shelf Edge Unit Area | 1,156.2 gross acres |
| Above the Shelf Area | 8,900 gross acres |
| **TOTAL** | **31,095.3 gross acres** |

JVDA, Art. I.

15.     Under the JVDA, Anadarko had the majority of the ownership interest in these areas[2] and, in turn, would bear much of the responsibility for their development.  *See generally id.*

16.     Upon execution of the JVDA and the applicable cross-conveyances and assignments arising thereunder, the parties stipulated that Anadarko's ownership interests in the AMI areas are as follows:

| Area Name | Anadarko's Ownership Interest in the Area and Applicable Leases |
|---|---|
| AEPC Operated Area | 73% |
| BBX Operated Area | 13% |
| Offset to the 520 Unit Area | 95% |
| Shelf Edge Unit Area | 100% |
| Above the Shelf Area | 60% |

*Id.*  The remaining percentage ownership interests were divided among other parties to the JVDA.  *Id.*

17.     Under the JVDA, Anadarko would own a majority interest in four of the five AMI areas (AEPC Operated Area, Offset to the 520 Unit Area, Shelf Edge Unit Area, and Above the Shelf Area).  *Id.*

---

[2] Each area within the AMI consists of many leases.  That is, ownership of the acreage in a particular area under the JVDA actually entailed ownership of the mineral interests that Anadarko, BBX Operating, or other parties to the JVDA leased from mineral interest holders within that area.  Schedules of the leases comprising each area at the time the JVDA was executed are included as Exhibits B and C to the JVDA.  JVDA, Exs. B & C.  The parties to the JVDA were obligated to amend Exhibits B and/or C to include additional leases within the AMI as they were acquired.  *See* JVDA, Art. V ("It is understood and agreed by all Parties to this Agreement that all leasehold owned by the Parties prior to the effective date of this Agreement be listed on Exhibits B and C attached hereto.  In the event any leasehold interest is not listed on Exhibits B and/or C, all Parties hereto agree to execute any and all such additional documents in order to accomplish the intent and purposes of this provision and Agreement as to such leasehold interest.").  Members of the BBX Group did not amend Exhibits B and C to the JVDA when new acreage was acquired, depriving Anadarko of its interests under JVDA and the Farmout.

18.     For the AEPC Operated Area, Offset to the 520 Unit Area, and Above the Shelf Area, the parties to the JVDA agreed that Anadarko was the Operator of the areas (for all of the ownership interest of the parties within the areas).  *Id*.

19.     For the AEPC Operated Area, Offset to the 520 Unit Area, and Above the Self Area, the JVDA provides that "AEPC will have the sole option to propose wells in [those areas] and will make all such decisions as a reasonably prudent operator." *Id*.

20.     During the term of the JVDA, the mineral rights within the AMI subject to participation by the parties, defined as "<u>Acquired Interests</u>," were "any oil and gas lease(s) or any interest therein, royalty interest, working interests, operating rights, net profits interests, overriding royalty interests or any farmouts or other contracts which affect lands and/or minerals lying wholly or partially within the applicable AMI."  *Id*., Art. III.

21.     Crucial to the purpose of the JVDA was notification by the parties when they acquired an Acquired Interest in which the other parties could participate.  Therefore, within 30 days of acquiring an Acquired Interest, the JVDA required notification to the other parties to the JVDA, after which each of the non-acquiring parties had the right, "for a period of thirty (30) days after receipt of such notice, in which to make its election to acquire its share of the Acquired Interest."  *Id*.  Without such notification, the non-acquiring parties would not have been able to participate in the development of the AMI properties, as was their contractual right (and in fact, the very purpose of the JVDA).

22.     Promptly after a non-acquiring party elected to acquire its share of an Acquired Interest, the JVDA required the acquiring party to assign said interest to the electing party.  *Id.*

Assignment of these interests was necessary to effectuate the shared participation contemplated by the JVDA.[3]

23.     The JVDA expired on May 1, 2013.  *Id*., Art. IV.

**B.      The Farmout Agreement**

24.     On April 1, 2011, while the JVDA was still in effect,[4] Anadarko E&P Company LP and Trinity entered into a Farmout Agreement ("Farmout") under which Anadarko was the Farmor and Trinity was the Operator.  A true and correct copy of the Farmout is attached hereto as Exhibit 2.

25.     Under the Farmout, Trinity, the operator, was to drill and complete two test wells, followed by "continuous development" of additional test wells within the AMI, as defined by the JVDA.  Farmout, Art. II.[5]

26.     Article I of the Farmout states that all of Anadarko's undivided leasehold interests in the pertinent oil and gas leases are subject to the Farmout, and Exhibit F to the Farmout includes a listing of leases acquired by Anadarko, and acquired by Trinity's affiliates, before the date of the Farmout (defined in the Farmout as the "Leases").  *Id*., Art. I & Ex. F.  The Farmout Agreement further provided that, "[p]ursuant to the JVDA, Farmor is obligated to offer to the other parties thereto a certain interest in each lease acquired in the JVDA contract area.  Farmor may continue to purchase leasehold interests within the JVDA contract area after the Effective

---

[3] Anadarko did not receive assignments of all of the interests to which it was entitled under the JVDA.

[4] The Farmout was made subject to the JVDA and provided that, while the Farmout and AMI were in effect, Anadarko and Trinity "will administer the acquisition of every Acquired Interest, as that term is defined in the AMI, pursuant to the AMI."  Farmout, § 4.03.  The Farmout provided that, "[u]pon termination of the AMI, for so long as Operator has the right to earn under this Farmout Agreement, the Farmout Area not then included within a Unit shall be deemed, as between the Parties, to be subject to an area of mutual interest agreement (the 'New AMI') containing the same terms as those contained in the AMI provision in the JVDA, except the only parties to the New AMI shall be the Parties hereto, and [Anadarko's] interest in each of the areas will remain the same as that set forth in Section 1 of the JVDA, with the balance being credited to [Trinity]."  *Id.*

[5] The Farmout was amended four times between its execution and December 2015.  In addition, a letter agreement to the Farmout modified the reimbursement provision.  To the extent that the amendments to the Farmout or the letter agreement amended or modified provisions quoted herein, they did not alter the substance of those provisions in a way that would affect Anadarko or Trinity's rights thereunder.

Date (the 'Future Leases')."  *Id*., Art. I.  The Farmout Agreement defines "<u>Farmout Leases</u>" as "collectively the Leases and the Future Leases LESS AND EXCEPT: (i) the Excluded Interests,[6] and (ii) those portions of the Leases and Future Leases covering lands outside of the Farmout Area."  *Id*.

27.    The Farmout defines the successful drilling and completion of a test well as an "<u>Earning Event</u>," more specifically defined to occur when Trinity "drilled a Test Well to Contract Depth and Completes it as a well capable of producing oil or gas in paying quantities in the manner and time herein provided, submits evidence thereof, and otherwise complies with and performs all other terms, covenants, and conditions hereof."  *Id*., § 3.01.[7]

28.    The Farmout provides that, "[u]pon the occurrence of an Earning Event, Operator shall earn and be entitled to receive from Farmor an assignment covering an undivided one hundred percent (100%) of Farmor's interest in the Farmout Leases, or the portions thereof, lying within the geographical confines of the Unit, as defined in Section 3.05 below, for that Test Well, subject to Farmor's reservation of an option to back-in as set forth in Section 3.02 below, an option to participate as set forth in Section 3.03 below[8], and an overriding royalty interest[9] in each Lease equal to the greater of (i) one percent (1%), or (ii) the difference between the lease burdens existing as of the Effective Date and twenty five percent (25%) (the '<u>Reserved ORRI</u>')."

---

[6] The Farmout defines "<u>Excluded Interests</u>" as "[a]ny interest(s) in the Leases or the Future Leases that must be assigned to one of the JVDA parties pursuant to the terms of the AMI as set forth in Article IV below, together with any interest not acquired by Operator as set forth in Article IV below."  Farmout, Art. I.

[7] The First Amendment to the Farmout, effective December 1, 2011, added the following language to Section 3.01: "An 'Earning Event' shall also occur if the Operator drills a Test Well through the Austin Chalk formation to a deeper formation and then Completes the well in a formation below the Austin Chalk as a well capable of producing oil or gas in paying quantities in the manner and time herein provided, submits evidence thereof, and otherwise complies with and performs all other terms, covenants, and conditions hereof."

[8] Section 3.03 gave Anadarko the option to participate with an undivided 50% of the interest earned by Trinity in any new well(s) in the unit.  Farmout, § 3.03.  The Fourth Amendment to the Farmout Agreement modified this percentage to 25%.

[9] An overriding royalty interest is the right to receive expense-free revenue from the production of oil and gas from a well. An overriding royalty interest is carved out of the operator's working interest and entitles its owner to a fraction of production.

*Id.*  The Farmout then applies the Reserved ORRI to Farmout Leases, stating "Such Reserved ORRI shall be proportionately reduced to the extent the Farmout Lease covers less than 8/8ths of the mineral estate, and/or Farmor owns less than the entire leasehold estate in the Farmout Lease," demonstrating the parties' intent that Anadarko's reservation of overriding royalty interests would apply to Farmout Leases. *Id.*  As discussed below, the parties' course of performance further evidences this intention.

29.     Section 3.02 of the Farmout provides that "[a]ny assignment by Operator pursuant to this Farmout Agreement shall also include an option which may be exercised by Farmor to back-in to a working interest[10] in the wellbore of the Test Well equal to twenty-five percent (25%) of the interest earned by Operator from the Farmor in the Test Well ('Proportionate Interest')." *Id.*, § 3.02.

30.     Anadarko was entitled to its proportionate share of any Acquired Interests acquired by Trinity whether the acquisition was made before or after the effective date of the Farmout. *Id.*, § 3.01.

31.     When any test well reached payout,[11] so that Anadarko could exercise these reserved rights, the Farmout required Trinity to notify Anadarko of the date on which payout occurred. *Id.*, § 3.02.

32.     After receipt of this notification, the Farmout further provided that Anadarko then had 60 days to elect in writing to exercise its back-in option. *Id.*  Any failure by Anadarko to notify Trinity of this election was deemed an election under the terms of the Farmout. *Id.*  That

---

[10] A working interest is a percentage of ownership in an oil and gas lease, granting its owner the right to explore, drill, and produce oil and gas from a tract of property.  Working interests owners are obligated to pay a corresponding percentage of the costs of leasing, drilling, producing, and operating a well or unit, depending on the terms of the operative agreements.
[11] The Farmout defines "Payout" as "when Operator shall have recovered from the proceeds of 8/8ths of production from a Test Well" after various deductions.  Farmout, § 3.02.

is, if a well reached payout, the Farmout provided that Anadarko was entitled to its reserved back-in working interest rights whether or not it actually elected to exercise them.

33.     The Farmout required Trinity to "immediately assign" to Anadarko any interests to which Anadarko elected to back-in under the Farmout (whether such election was made in writing or automatically). *Id.*[12]

34.     Therefore, for any well that reached payout, the only situation in which Trinity was not required to assign Anadarko its working interests under the Farmout is if Anadarko explicitly and affirmatively notified Trinity that it ***did not*** elect to back-in to its interests. *See id.*, §§ 3.01-3.02.

## C.     BBX Entered Agreements and Became the Operator of the Farmout Wells and Other Wells

35.     Trinity entered into several operating agreements under which BBX took over the physical drilling and completion of the wells subject to the Farmout Agreement.

36.     Pursuant to the operating agreements with Trinity, BBX drilled and completed at least 23 wells during the effective term of the Farmout.

37.     Specifically, BBX drilled and completed at least the following 23 wells within the AMI/New AMI (the "<u>Farmout Wells</u>"):

| Farmout Wells | |
|---|---|
| BP Black Stone A-32 #1<br>API # 42-241-30819 | Gran Torino South #1<br>API # 42-241-30838 |
| David Glenn #1H<br>API # 42-241-30818 | Gran Torino South #2<br>API # 42-241-30844 |
| David Glenn #2H<br>API # 42-241-30824 | Gran Torino South #3<br>API #42-241-30864 |

---

[12] Anadarko's election to back-in to its working interest in a well that reached payout did not affect its overriding royalty interest; that is, Anadarko could have both a working interest and an overriding royalty interest in the same well.

| | |
|---|---|
| Elta Williams #1<br>API # 42-241-30831 | High Plains Drifter #1<br>API # 42-241-30849 |
| Fistful of Dollars North #1<br>API # 42-241-30837 | Invictus<br>API # 42-241-30843 |
| Fistful of Dollars North #2<br>API # 42-241-30845 | Josey Wales #1H<br>API # 42-241-30827 |
| Fistful of Dollars #2<br>API # 42-241-30852 | Magnum Force #1H<br>API # 42-241-30870 |
| Fistful of Dollars #3<br>API # 42-241-30868 | Million Dollar Baby #1H<br>API # 42-241-30825 |
| Fistful of Dollars #1H-AC<br>API # 42-241-30834 | Mystic River #1<br>API # 42-241-30846 |
| Frances Kunkel AC #1H<br>API # 42-241-30830 | Space Cowboy #1<br>API # 42-241-30857 |
| Frances Kunkel #1H<br>API # 42-241-30821 | Space Cowboy #2<br>API # 42-241-30873 |
| Gran Torino North #1<br>API # 42-241-30842 | |

38.     BBX entered into operating agreements for each of the Farmout Wells (the "Operating Agreements"), subject to Anadarko's rights with Trinity under the Farmout Agreement, including its option to back-in to its proportionate share of a working interest in the wells that reached payout and its overriding royalty interests in the Farmout Wells. *See* Farmout, §§ 3.01-3.02.

39.     Each of the Operating Agreements includes and incorporates Exhibit A, a list of all working interest owners who have an interest in the well at issue under the operating agreement, with their respective percentage working interests both before and after payout of the well.

40.     Anadarko is a party to each of the Operating Agreements.  Anadarko is included on Exhibit A to each of the Operating Agreements, which define the entities listed on Exhibit A

as non-operator parties. Exhibit A also acknowledges Anadarko's option to back in to working interests under Section 3.02 of the Farmout.

41.     The Operating Agreements provide:

> In the event any party shall fail to make the arrangements necessary to take in kind or separately dispose of its proportionate share of the oil and gas produced from the Contract Area, for so long as this Operating Agreement is in effect, Operator shall have the right, subject to the revocation at will by the party owning it, but not the obligation to purchase such oil and gas or sell it to others at any time and from time to time, for the account of the non-taking party at the prevailing market price at the well.

Operating Agreements, § VI.C. On information and belief, Trinity and/or BBX sold the oil and gas production from the wells in which Anadarko had an interest but failed to account to Anadarko for its share of the sales proceeds or at the prevailing market price at the well.

42.     The Operating Agreements require that each party "execute such division orders and contracts as may be necessary for the sale of its interest in production in the Contract Area, and…shall be entitled to receive payment directly from the purchaser thereof for its share of all production." *Id.*

43.     Trinity and BBX failed to pay or underpaid Anadarko revenue to which it was entitled under the Farmout Agreement and/or the Operating Agreements, as a working interest owner in at least eight wells.[13]

---

[13] Specifically, BBX failed to pay or underpaid Anadarko revenue to which it was entitled as a working interest owner in wells that included but are not limited to the Payout Wells.

**D.      Trinity and BBX Acknowledged Obligations to Pay Anadarko Based on the
        Working Interests that it Acquired and the Overriding Royalty Interests that it
        Reserved**

44.      As operator under the Operating Agreements, BBX sent Anadarko several
division orders[14] acknowledging Anadarko's working interests and/or reserved overriding
royalty interests in the some of the Farmout Wells ("Division Orders").

45.      Each Division Order set forth BBX's statement of Anadarko's proportional
ownership in the hydrocarbons produced by the applicable wells.  In general, division orders set
forth working interest owners' and/or royalty owners' decimal interest as calculated by the
operator, so that the operator may make payments based on that decimal interest unless and until
notified by the working interest owner and/or royalty owner that the ownership has been
changed.

46.      Anadarko executed the Division Orders, correcting the decimal interests in some
of them before executing and returning them to BBX.  Anadarko has since learned that some of
the decimal interests reflected in the Division Orders understated Anadarko's correct ownership
interests.

47.      The Division Orders provide that Anadarko "will be paid in accordance with the
division of interest set out" therein, and that BBX "shall pay all parties at the price agreed to by
the operator for oil, gas and related liquid hydrocarbons to be sold pursuant to this division
order."  Division Orders, p. 1.  The Division Orders further provide that "payment is to be made
monthly by Payer's [BBX's] check, based on this division of interest for oil, and/or gas run from
the property listed" therein, "less taxes required by law to be deducted and remitted by Payer as

---

[14] Anadarko received some, but not all, of the division orders related to its interests in the Farmout Wells.

purchaser, and valued in accordance with the terms of the lease to which such production is allocated." *Id.*

48.     Although BBX paid other working interest owners and royalty owners for their share of production in the Farmout Wells, both Trinity and BBX failed to pay or underpaid Anadarko for the revenue related to its working interests and overriding royalty interests addressed by the Division Orders.  BBX made limited payments to Anadarko for a few wells, but Anadarko has not been paid all of the revenue due for its interests.

49.     Since Anadarko's Original Complaint was filed, BBX has filed new division orders pertaining to the Farmout Wells with the Jasper County Appraisal District.   These designations improperly exclude Anadarko's ownership in the Farmout Wells.

**E.     Trinity Recorded Inaccurate and/or Incomplete Unit Designations for the Farmout Wells as Required by the Farmout**

50.     Section 3.05 of the Farmout Agreement provides, in pertinent part, that Trinity "shall prepare and file Unit Designations for each Test Well pursuant to the JVDA."  Farmout, § 3.05.  That is, for each well that BBX drilled on behalf of its affiliate Trinity, Trinity was required to prepare a unit designation and submit it to Anadarko.

51.     Although Trinity recorded unit designations for each of the Farmout Wells, in several instances the unit designations were inaccurate and/or incomplete.  The inaccurate unit designations underestimated Anadarko's overriding royalty interests and working interests in leases covering the Farmout Wells.

**F.     Trinity and BBX Failed to Provide Anadarko with the Revenue Related to its Overriding Royalty Interest in the 23 or More Wells Drilled**

52.     The drilling and completion of each of the Farmout Wells constituted an Earning Event as defined in Section 3.01 of the Farmout, meaning that they entitled Trinity to Anadarko's undivided 100% interest of the Farmout Leases in the unit in which each well was

drilled, subject to Anadarko's reservation of its overriding royalty interests in the Farmout

Leases, and they triggered Trinity's duty to notify Anadarko when the wells reached payout.

53.     Indeed, under Section 3.01 of the Farmout, Anadarko reserved an overriding

royalty interest in each of the Farmout Leases covering the Farmout Wells.  Farmout, § 3.01.

Anadarko's overriding royalty interests accrued at first production.  *Id.*

54.     Trinity failed to pay Anadarko the proper revenue related to its overriding royalty

interests in the Farmout Wells.  Therefore, Anadarko is owed significant past revenue and

interest related to its overriding royalty interests in the Farmout Wells, some of which accrued

and continues to accrue post-petition, in the amount of at least $4.5 million (at least $4.3 million

pre-petition and at least $200,000 post-petition).[15]

**G.     Trinity Refused to Assign Anadarko its Working Interests in Payout Wells Under the Farmout**

55.     During the term of the Farmout, Anadarko elected to participate in at least eight

(8) wells in the AMI that reached payout, as defined by the Farmout.

56.     For each of these eight wells (the "Payout Wells"), Trinity provided Anadarko

with notice of payout on the following dates:

| Well Name | Date Anadarko Received Notice of Payout |
|---|---|
| David Glenn #1H | Mar. 1, 2014 |
| Elta Williams #1 | May 1, 2013 |
| Fistful of Dollars North #1 | Dec. 1, 2013 |
| Fistful of Dollars #1H-AC | Jan. 1, 2014 |

---

[15] Anadarko's estimated revenue calculation is based on limited information, including production data only through May 2016 and limited title information.  Therefore, this amount will increase as more information is available. Moreover, Anadarko considers the post-petition damages in this complaint as administrative expenses and will file an application for the allowance of an administrative expense with respect to any post-petition amounts owed or damage claims, if appropriate.

| Gran Torino North #1 | Sept. 1, 2014 |
| Gran Torino South #2 | Feb. 1, 2015 |
| Million Dollar Baby #1H | Sept. 1, 2014 |
| Mystic River #1 | July 1, 2015 |

To the extent any additional Farmout Wells have reached payout and Anadarko has not received such required notice, Anadarko is owed payout statements and payout notification.

57.    For each of the Payout Wells, Anadarko elected to exercise its option to back-in to a working interest in those wells pursuant to Section 3.02 of the Farmout by providing written notice to Trinity within 60 days of receiving notice of payout.

58.    Anadarko elected, in writing, to back-in to its working interests, pursuant to Section 3.02 of the Farmout, for the eight Payout Wells, as follows:

| Well Name | Date Anadarko Elected, in Writing, to Back-In to Its Working Interest |
| --- | --- |
| David Glenn #1H | May 15, 2014 |
| Elta Williams #1 | Sept. 3, 2013 |
| Fistful of Dollars North #1 | Mar. 13, 2014[16] |
| Fistful of Dollars #1H-AC | Jan. 14, 2014[17] |
| Gran Torino North #1 | Dec. 11, 2014 |
| Gran Torino South #2 | Apr. 13, 2015[18] |
| Million Dollar Baby #1H | Dec. 11, 2014 |

[16] Blake Biscoe of BBX acknowledged receipt of this written election on March 13, 2014.
[17] BBX acknowledged receipt of Anadarko's written election to exercise its back-in working interest in the Fistful of Dollars #1H-AC well, which was sent by certified mail.
[18] BBX acknowledged receipt of Anadarko's written election to exercise its back-in working interest in the Gran Torino South #2 well, which was sent by certified mail.

| Mystic River #1 | Oct. 1, 2015 |

59.     Under Section 3.02 of the Farmout, Trinity was required to immediately assign Anadarko the working interests for which Anadarko elected to exercise its back-in option.

60.     Trinity failed to assign Anadarko its interests related to the Payout Wells, with the exception of the David Glenn #1 well.  As a result, Anadarko's title to its proportionate interests in these wells has not been fully documented and recorded by Trinity.  Trinity's conduct in not providing proper assignments to Anadarko caused Anadarko not to be paid the proper revenue to which it was entitled.  Anadarko has therefore lost past revenues, some of which accrued post-petition in the amount of no less than $9.3 million (at least $8.7 million pre-petition and at least $540,000 post-petition),[19] as well as future lost revenue and the value of the unassigned interests if Anadarko is not assigned its interests in the Payout Wells.  In addition, Anadarko is owed the revenue from its assigned interest in the David Glenn #1 well.

61.     Trinity and Anadarko's course of performance during the effective term of the Farmout indicates that they intended to, and did, operate pursuant to the terms of the Farmout regarding Anadarko's right to back-in to its working interests in leases covering wells that reached payout.  First, Trinity gave Anadarko notice of payout for each well that reached payout, including but not limited to the Payout Wells, as required by Section 3.02 of the Farmout.  *See* Farmout, § 3.02.  For each of the wells for which it received notice of payout, Anadarko either elected to back-in by providing written notice or allowing the automatic election provision to control, pursuant to Section 3.02 of the Farmout.  *See id.*  The parties' course of performance establishes that Anadarko reserved an overriding royalty interest in all of the Farmout Leases.

---

[19] Anadarko requests the post-petition damages in this complaint as administrative expenses and subsequently will request those administrative expenses in the bankruptcy case.

62.     Moreover, Trinity and BBX acknowledged Anadarko's interests under the Farmout in agreements with third parties regarding these same interests.  For example, the "Make My Day" Joint Venture and Development Agreement, effective May 1, 2013, between BBX; Trinity; Adageo Energy Partners, L.P.; Amarado Oil Company, Ltd.; American Flourite, Inc.; BTE Energy, LLC; DW Energy Group, LLC; GeoSouthern Energy Corporation; Gillco Energy, LP; Hickson Energy Corp.; Kodiak Resources, Inc.; RJH Energy, Ltd.; and Stephen Production Company was made subject to the Farmout between Anadarko and Trinity and provides that "[t]he parties agree to be bound by and subject to all the terms of the TRR/AEPC Farmout agreement."  The Make My Day Joint Venture and Development Agreement expressly acknowledges that "AEPC has an option to participate in drilling proposals per the terms of the Farmout Agreement" and that "[a]ll parties hereto shall receive written confirmation within ten (10) days of AEPC election to participate in the initial well on an after payout (APO) basis and any participation election on subsequent wells in an established unit."

**H.    Anadarko's Pre-Petition Requests for Assignments**

63.     Pre-petition, Anadarko sent several requests to Trinity and its affiliates, including BBX, in an effort to obtain the interests to which it is entitled under the JVDA and the Farmout, and lost revenue associated with those interests.

64.     Specifically, between December 17, 2015 and March 7, 2016 (pre-petition), Anadarko sent Trinity and BBX several requests, seeking the revenue associated with its reserved overriding royalty and the appropriate conveyance documents and the revenue associated with working interests.  In both its pre-petition responses and post-petition positions, Trinity asserts incorrect interpretations of the JVDA and Farmout, inconsistent with the terms of the Farmout and Trinity's course of dealing and performance under the Farmout.  *See* Farmout, §§ 3.01-3.02.

65.    Pre-petition, Anadarko indicated by letter to Trinity that Trinity's asserted position substantially understated Anadarko's title under the Farmout and JVDA, and repeatedly requested that Anadarko's proper interests under the Farmout in the Payout Wells be credited to Anadarko.

66.    Despite these pre-petition requests, Trinity and BBX refused to assign Anadarko the interests that it earned and to which it is entitled under the Farmout and refused to pay Anadarko for the revenues associated with its overriding royalty interests and working interests. Trinity and BBX's failure to make these assignments or payments continues post-petition.

67.    As a result of Trinity's refusal to assign Anadarko the back-in working interests and Trinity and BBX's failure to pay Anadarko revenue for overriding royalty interests and working interests to which it is entitled under the Farmout, Division Orders, and Operating Agreements, Anadarko has suffered damages, including the lost past revenue totaling no less than $13.5 million and future lost revenue and the value of the unassigned interests if the interests are not assigned to Anadarko.[20]

## VII.
## CAUSES OF ACTION

### A.    Count 1: Declaratory Judgment under 28 U.S.C. §§ 2201 and 2202

68.    Anadarko incorporates all prior paragraphs into this section to the extent not inconsistent as if fully set forth herein.

69.    Under Rule 7001(1) and (9) of the Federal Rules of Bankruptcy Procedure, both "a proceeding to recover money or property" and "a proceeding to obtain a declaratory judgment relating to…the foregoing" require an "adversary proceeding."  FED. R. BANKR. P. 7001(1), (9).

---

[20] As previously noted, this amount is likely significantly understated, as it is necessarily based on the limited information that Anadarko currently has in its possession.  Anadarko has consistently requested additional information from Trinity to determine the amount of its interests, including through Notices of 2004 Deposition and related document requests.

70.     In a case of actual controversy within its jurisdiction, except with respect to inapplicable exceptions, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  28 U.S.C. § 2201(a).  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.  *Id.*

71.     Anadarko seeks a declaratory judgment from this Court under 28 U.S.C. § 2201 *et seq.* as to the amount of Anadarko's proportionate share in the working interests in the Payout Wells and Anadarko's overriding royalty interests in the Farmout Leases.

72.     Anadarko seeks a declaratory judgment from this Court under 28 U.S.C. § 2201 *et seq.* that the overriding royalty interests in the Farmout Leases covering the 23 Farmout Wells and the back-in working interests in the 8 Payout Wells are (a) property of Anadarko and not property of the Debtor's estate under 11 U.S.C. § 541(b)(4); and (b) not executory contract or lease interests that the Debtor may reject under 11 U.S.C. § 365.

73.     Anadarko further seeks a declaratory judgment from this Court under 28 U.S.C. § 2201 *et seq.* as to the amounts owed by Trinity and/or BBX to Anadarko both pre- and post-petition.[21]

74.     Anadarko further seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that the assignment of Anadarko's interests in the Farmout Wells and the Payout Wells constitutes an absolute, present, unequivocal conveyance of vested real property interests, and

---

[21] Anadarko also seeks any other necessary and proper relief pursuant to 28 U.S.C. § 2202, including a turnover of funds representing amounts owed to Anadarko by Trinity and/or BBX post-petition and that are determined to be property of Anadarko rather than BBX or the Trinity bankruptcy estate.  As set forth in footnote 1, Anadarko will file a proof of claim within Trinity's bankruptcy case asserting a claim for any pre-petition damages that the Court determines Trinity owes Anadarko.  Anadarko will further file an application for the allowance of an administrative expense with respect to any post-petition amounts owed or damage claims, if appropriate.

that such interest in the Farmout Wells and the Payout Wells is the property of Anadarko and not the property of BBX or Trinity's bankruptcy estate.

75.     Anadarko further seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that Trinity breached Section 3.05 of the Farmout Agreement by submitting and recording inaccurate and/or incomplete unit designations for each of the Farmout Wells.

76.     Section 9.343 of the Texas Business and Commerce Code "provides a security interest in favor of interest owners, as secured parties, to secure the obligations of the first purchaser of oil and gas production, as debtor, to pay the purchase price."  TEX. BUS. & COMM. CODE § 9.343(a).   Section 9.343 further provides that "[a]n authenticated record giving the interest owner a right under the real property law operates as a security agreement created under this chapter."  *Id*.  "The act of the first purchaser in signing an agreement to purchase oil or gas production, ***in issuing a division order***, or in making any other voluntary communication to the interest owner or any governmental agency recognizing the interest owner's right operates as an authentication of a security agreement" under the Section.  *Id*. (emphasis added).

77.     The security interest created by Section 9.343 extends to the "proceeds [of] oil or gas production."  *Id*. § 9.343(c).

78.     An operator is the "first purchaser" if it "receives proceeds attributable to the interest of other interest owners from a third-party purchaser under a division order."  *Id*. § 9.343(r)(3).  BBX is the "first purchaser of oil and gas production" as defined in Section 9.343 of the Texas Business and Commerce Code.

79.     The Division Orders are "authenticated records" under Section 9.343 of the Texas Business and Commerce Code.  Therefore, the Division Orders created a security interest in

favor of Anadarko, as a secured party, to secure the obligations of BBX, as debtor (as that term is defined by statute), to pay the purchase price. *See* TEX. BUS. & COMM. CODE § 9.343(a).

80.     The Division Orders provide Anadarko, as a working interest owner and overriding royalty interest owner in certain wells, with a right to those interests under Texas law.

81.     The Division Orders, voluntarily sent by BBX to Anadarko constitute acknowledgement by BBX of Anadarko's rights to its working interests and overriding royalty interests in the wells covered by the Division Orders.

82.     Under Section 9.343 of the Texas Business and Commerce Code, Anadarko has a perfected security interest in the proceeds from the oil and gas production related to Anadarko's working interests and overriding royalty interests that takes priority over subordinate interests.

83.     Accordingly, Anadarko further seeks declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that it has a perfected security interest in the oil and gas production from certain wells, and the cash proceeds from that production, and is entitled to continuing interest as accrued thereafter.

84.     Anadarko further seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that proceeds for oil and gas production in which Anadarko has a security interest under Section 9.343 of the Texas Business and Commerce Code were erroneously paid to Trinity and/or BBX.

85.     Anadarko further seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that it is a party to the Operating Agreements.

86.     Anadarko further seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that the Operating Agreements required BBX to pay Anadarko revenue related to its working interests, and that BBX failed to do so.

87.     Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment. 28 U.S.C. § 2202. Accordingly, Anadarko seeks any other necessary and proper relief pursuant to 28 U.S.C. § 2202, including a turnover of funds representing amounts owed to Anadarko by Trinity post-petition and/or BBX, specific performance of Section 3.02 of the Farmout (requiring assignment of Anadarko's proportionate share of its working interests in the Payout Wells), and specific performance of Section 3.05 of the Farmout (submission and recoding of accurate and complete unit designations for the units related to each of the Farmout Wells).

**B.      Count 2: Breach of Contract – Farmout Agreement**

88.     Anadarko incorporates all prior paragraphs into this section to the extent not inconsistent as if fully set forth herein.

89.     The Farmout Agreement between Anadarko and Trinity was a valid, enforceable contract.

90.     BBX, under its Operating Agreements with Trinity, drilled and completed each of the Farmout Wells on behalf of Trinity, which constituted an "Earning Event" under Section 3.01 of the Farmout.

91.     Under Section 3.01 of the Farmout, Anadarko reserved an overriding royalty interest in the Farmout Leases covering the Farmout Wells.

92.     Neither Trinity nor BBX paid Anadarko the revenue related to its overriding royalty interest in the Farmout Wells.

93.     Each failure by Trinity to pay Anadarko revenue related to its overriding royalty interest in the Farmout Wells is a breach of Section 3.01 of the Farmout.

94.     At least the following eight wells reached payout (the "Payout Wells"): David Glenn #1H; Elta Williams #1; Fistful of Dollars North #1; Fistful of Dollars #1H-AC; Gran Torino North #1; Gran Torino South #2; Million Dollar Baby #1H; and Mystic River #1.[22]

95.     Trinity failed to assign Anadarko its working interest in all of the Payout Wells except the David Glenn #1 well.

96.     Each failure by Trinity to assign Anadarko its working interest in a Payout Well is a breach of Section 3.02 of the Farmout.

97.     As a result of Trinity's breach of the Farmout, Anadarko has sustained actual and economic damage that continues to the present day in the amounts of no less than $9.3 million, representing the amount of past due revenue related to Anadarko's working interests, and no less than $4.5 million, representing the amount of past due revenue related to Anadarko's overriding royalty interests. Anadarko is also entitled to specific performance of Trinity's obligations under the Farmout – assignment of the working interests to which Anadarko is entitled.

**C.     Count 3: Breach of Contract – Division Orders**

98.     Anadarko incorporates all prior paragraphs into this section to the extent not inconsistent as if fully set forth herein.

99.     The Division Orders are valid, enforceable agreements between Anadarko and BBX.  Sending the Division Orders to Anadarko constituted a contractual offer by BBX.  By executing and returning certain the Division Orders, Anadarko accepted BBX's contractual offers.

---

[22] To the extent any additional Farmout Wells have reached payout to become Payout Wells, Anadarko is entitled to receive payout statements and payout notifications.  In addition, Anadarko asserts each cause of action herein related to the additional Payout Well.

100.    The Division Orders provide that BBX has an obligation to pay Anadarko for the sale of its share of the production based on Anadarko's working interests and/or overriding royalty interests in the particular percentages enumerated in the Division Orders.

101.    BBX collected production revenue from the Farmout Wells.

102.    Although BBX paid other interest holders for their share of production in the Farmout Wells, BBX failed to pay or underpaid Anadarko revenue related to its working interests and/or overriding royalty interests as required by the Division Orders.

103.    Anadarko demanded payment for the revenue related to its working interests and/or overriding royalty interests, but BBX refused to pay the revenue to Anadarko.

104.    As a result of BBX's failure to pay or underpayment to Anadarko for revenue related to its working interests and overriding royalty interests as required by the Division Orders, Anadarko suffered significant monetary loss.

**D.      Count 4: Breach of Contract – Operating Agreements**

105.    Anadarko incorporates all prior paragraphs into this section to the extent not inconsistent as if fully set forth herein.

106.    The Operating Agreements are valid, enforceable agreements.

107.    Pursuant to the Farmout, Anadarko elected to back in to its working interest in the Payout Wells.  *See id.*, § 3.02.

108.    Anadarko is a party to the Operating Agreements.  By the terms of the Operating Agreements, the entities listed on Exhibit A, including Anadarko, are parties to the Operating Agreements.

109.    BBX collected production revenue from the Farmout Wells.

110.    BBX breached Section VI.C of each of the Operating Agreements by failing to pay or underpaying Anadarko revenue to which it was entitled as a working interest owner in certain wells.

111.    BBX's breach of Section VI.C of the Operating Agreements proximately caused monetary harm to Anadarko in that Anadarko did not receive revenue to which it was entitled.

112.    As the result of BBX's breaches, Anadarko sustained significant monetary damages, plus pre- and post-judgment interest.

**E.    Count 5: Violation of Texas Natural Resources Code §§ 91.401 *et seq.***

113.    Anadarko incorporates all prior paragraphs into this section to the extent not inconsistent as if fully set forth herein.

114.    A division order "directs and authorizes the payor to make payment" to the payee. TEX. NAT. RES. CODE § 91.401(1).  Under the Texas Natural Resources Code, a payee is a person owed "proceeds derived from the sale of oil or gas from an oil or gas well located in" Texas, and a payor is the "operator of the well from which such production was obtained." *Id.* § 91.401(1), (2).

115.    Under the Texas Natural Resources Code, Anadarko is the payee of the Division Orders and BBX is the payor. *Id.*

116.    As payor of the Division Orders, BBX has an obligation to make payment to Anadarko for its working interests and overriding royalty interests in the wells covered by the Division Orders.

117.    BBX collected production revenue from the Farmout Wells.

118.    BBX failed to make any payments to Anadarko based on its working interests or overriding royalty interests in the wells covered by the Division Orders.

119.    Each of BBX's failures to pay or underpayment to Anadarko of the amounts to which Anadarko is entitled under the Division Orders constitutes a separate violation of Section 91.401 of the Texas Natural Resources Code.

120.    As a result of BBX's violations of the Texas Natural Resources Code, Anadarko has sustained monetary loss for the revenue to which it is entitled attributable to its working interests and overriding royalty interests in the wells covered by the Division Orders.

### F.    Count 6: Conversion

121.    Anadarko incorporates all prior paragraphs into this section to the extent not inconsistent as if fully set forth herein.

122.    After drilling the Farmout Wells, Trinity and/or BBX obtained revenue from the sale of the production from those wells.

123.    The revenue Trinity and/or BBX obtained for the Farmout Wells was delivered to Trinity and/or BBX for safekeeping until it dispersed royalty payments to royalty owners.

124.    The revenue related to Anadarko's reserved overriding royalty interests in the Farmout Wells and working interests in the Payout Wells were intended to be segregated from payments due to other working interest and royalty owners, and any portion of revenue that Trinity and/or BBX were entitled to retain.

125.    The revenue that Anadarko seeks for its reserved overriding royalty interests in the Farmout Wells and working interests in the Payout Wells is in substantially the same form in which it was received by Trinity and/or BBX when the production from those wells was sold.

126.    The revenue for Anadarko's reserved overriding royalty interests in the Farmout Wells and working interests in the Payout Wells is not the subject of a title claim by Trinity or BBX.

127.    Trinity and/or BBX wrongfully exercised dominion over the revenue associated with Anadarko's proportionate share of its working interests in the Payout Wells and its overriding interests in the Farmout Wells.

128.    Anadarko requested, in writing, that BBX pay Anadarko the revenue related to its proportionate share of its working interests in the Payout Wells and its overriding interests in the Farmout Wells.

129.    To date, neither Trinity nor BBX has paid Anadarko revenue related to its proportionate share of its working interests in the Payout Wells or its overriding royalty interests in the Farmout Wells.

130.    As the result of Trinity and/or BBX's conversion of the revenue to which Anadarko is entitled, Anadarko has suffered monetary damages.

**G.    Count 7: Unjust Enrichment**

131.    Anadarko incorporates all prior paragraphs into this section to the extent not inconsistent as if fully set forth herein.

132.    BBX made payments to Trinity that improperly included revenue to which Anadarko was entitled as an overriding royalty interest owner and/or working interest owner.

133.    To the extent that Trinity received revenue to which Anadarko was entitled as an overriding royalty interest owner and/or working interest owner, Trinity was unjustly enriched.

134.    BBX made promises implied by law to pay Anadarko revenue related to its working interests and/or overriding royalty interests in the Farmout Wells.

135.    To the extent BBX held or did not pay Anadarko the revenue to which it was entitled for its working interests and/or overriding royalty interests in the Farmout Wells, BBX was unjustly enriched.

**H.      Count 8: Recovery of Attorneys' Fees**

136.    Anadarko incorporates all prior paragraphs into this section to the extent not inconsistent as if fully set forth herein.

137.    Necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.  28 U.S.C. § 2202.  Such further relief can include an award of attorneys' fees.  Accordingly, Anadarko also seeks the recovery of its attorneys' fees and costs pursuant to 28 U.S.C. § 2202.

138.    Anadarko is entitled to recovery of its reasonable attorneys' fees for Trinity's and/or BBX's breaches of contract.

## VIII.
## PRAYER

Wherefore, Anadarko prays for the following:

a.      that this Court order declaratory judgment that any assignment of Anadarko's interests in the Farmout Wells and/or the Payout Wells constitutes an absolute, present, unequivocal conveyance of a vested real property interest, and therefore such interests in the Farmout Wells and/or the Payout Wells is the property of Anadarko, as opposed to being a claim for payment of debt owed by Trinity under the parties' agreements;

b.      that this Court order declaratory judgment as to the amount of Anadarko's proportionate share in the working interests in the Payout Wells and Anadarko's overriding royalty interests in the Farmout Leases;

c.      that this Court order that Anadarko's back-in working interests in the Payout Wells are (a) property of Anadarko and not property of the Debtor's estate; and (b) not executory contract or lease interests that the Debtor may reject under 11 U.S.C. § 365;

d.      that this Court order declaratory judgment that the Farmout required Trinity and/or its agents to provide Anadarko, and record with the State, accurate and complete unit designations for each of the units related to the Farmout Wells, and that Trinity and/or its agents failed to do so;

e.   that this Court order declaratory judgment that proceeds for oil and gas production in which Anadarko has a security interest under Section 9.343 of the Texas Business and Commerce Code were erroneously paid to Trinity and/or BBX;

f.   that this Court order declaratory judgment that the Division Orders required BBX to pay Anadarko revenue related to its working interests and overriding royalty interests, and that BBX failed to do so;

g.   that this Court order declaratory judgment that Anadarko is a party to the Operating Agreements;

h.   that this Court order declaratory judgment that the Operating Agreements required BBX to pay Anadarko revenue related to its working interests, and that BBX failed to do so;

i.   that this Court order specific performance by ordering Trinity to assign to Anadarko its proportionate share of the working interests in the Payout Wells, pursuant to Section 3.02 of the Farmout;

j.   that this Court order specific performance by ordering Trinity to provide Anadarko, and record with the State of Texas, accurate and complete unit designations for each of the units related to the Farmout Wells;

k.   that this Court award judgment in favor of Anadarko for pre- and post-petition damages owed by Trinity and/or BBX, related to the amounts to which Anadarko is entitled for its overriding royalty interests in the Farmout Wells;

l.   that this Court award judgment in favor of Anadarko for pre- and post-petition damages owed by Trinity and/or BBX, related to the amounts to which Anadarko is entitled for its proportionate share of its working interests in the Payout Wells;

m.   that this Court award restitution to Anadarko for the amounts Trinity and/or BBX have been unjustly enriched;

n.   an award of costs in favor of Anadarko;

o.   an award of reasonable attorneys' fees in favor of Anadarko; and

p.   that Anadarko be granted all other relief, general or special, at law or in equity, to which Anadarko shows itself justly entitled.

Dated: January 6, 2017     Respectfully submitted,

            NORTON ROSE FULBRIGHT US LLP


            */s/ William Greendyke*
            William Greendyke (SBT 08390450)
            Bob Bruner (SBT 24062637)
            Daniel M. McClure (SBT 13427400)
            Melanie B. Rother (SBT 24041826)
            Fulbright Tower
            1301 McKinney, Suite 5100
            Houston, TX  77010-3095
            Telephone:  (713) 651-5151
            Facsimile:  (713) 651-5246

            COUNSEL FOR ANADARKO E&P ONSHORE LLC

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on January 6, 2017, a true and correct copy of the foregoing document was served on all counsel of record by ECF, e-mail, and/or first class United States mail, postage prepaid.

*/s/ William Greendyke*
William Greendyke
